**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05 CR 931 |
| | ) | |
| DAVID CONRAD, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

After a two-week trial in which fourteen witnesses testified and dozens of exhibits were admitted into evidence, a jury found Defendant, David Conrad, guilty on eight counts of possessing, transporting, advertising, and distributing child pornography in violation of 18 U.S.C. §§ 2251(c)(1)(A), 2251(d), 2252A(a)(1), 2252A(a)(2)(A), 2252A(a)(5)(B), 2252A(b)(1), and 2252A(b)(2). Defendant has filed a motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29 and, in the alternative, for a new trial under Rule 33. For the following reasons, the Court denies Defendant's motion for judgment of acquittal and for a new trial.[1]

### LEGAL STANDARDS

"A district court should grant a motion for a judgment of acquittal only when there is insufficient evidence to sustain a conviction." *United States v. Moses*, 513 F.3d 727, 733 (7th Cir. 2008); *see also United States v. Presbitero*, 569 F.3d 691, 704 (7th Cir. 2009). A court reviewing a Rule 29 motion should "view the evidence in the light most favorable to the

---

[1] The Court provided Defendant with an opportunity to submit a reply brief in connection with his motion (*see* R. 307, 3/11/10 Minute Order), but he did not submit such a brief.

government and ask whether any rational jury could have found the essential elements of the charged crime beyond a reasonable doubt." *Presbitero*, 569 F.3d at 704; *see also United States v. Warren*, 593 F.3d 540, 546 (7th Cir. 2010); *United States v. Bolivar*, 532 F.3d 599, 603 (7th Cir. 2008); *Moses*, 513 F.3d at 733; *United States v. Genova*, 333 F.3d 750, 757 (7th Cir. 2003) ("The issue on a motion under Rule 29(c) is the same as the issue on appeal: whether the evidence, taken in the light most favorable to the verdict, permits a sensible person to find beyond a reasonable doubt that the defendant committed the crime alleged."); *United States v. Fujii*, 301 F.3d 535, 539 (7th Cir. 2002). A court will "set aside a jury's guilty verdict only if 'the record contains no evidence, regardless of how it is weighed,' from which a jury could have returned a conviction." *Presbitero*, 569 F.3d at 704 (quoting *Moses*, 513 F.3d at 733).

"Under Rule 33 of the Federal Rules of Criminal Procedure, a district court 'may vacate any judgment and grant a new trial if the interest of justice so requires.'" *United States v. McGee*, 408 F.3d 966, 979 (7th Cir. 2005); *see also United States v. Christ*, 513 F.3d 762, 775 (7th Cir. 2008). "'[C]ourts have interpreted [Rule 33] to require a new trial in the interests of justice in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial.'" *United States v. Eberhart*, 388 F.3d 1043, 1048 (7th Cir. 2004), *overruled on other grounds*, 546 U.S. 12, 126 S.Ct. 403 (2005) (quoting *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989), with internal quotation from *Kuzniar* omitted). "'A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly.'" *Eberhart*, 388 F.3d at 1048 (quoting *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994)). Accordingly, a court may grant a new trial if the jury's verdict is "so contrary to the weight of the evidence that a new trial is required

in the interest of justice." *United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999) ("The focus in a motion for a new trial is not on whether the testimony is so incredible that it should have been excluded. Rather, the court considers whether the verdict is against the manifest weight of the evidence, taking into account the credibility of the witnesses."). "The court should grant a motion for a new trial only if the evidence 'preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.'" *United States v. Swan*, 486 F.3d 260, 266 (7th Cir. 2007) (quoting *United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989)); *see also Presbitero*, 569 F.3d at 706 (quoting *Washington*, 184 F.3d at 657-58).

## FACTUAL BACKGROUND[2]

Palos Heights Police Sergeant Michael Zaglifa was conducting an undercover investigation of on-line child pornography distribution on July 12 and October 24, 2002. During each of those undercover sessions, Sergeant Zaglifa entered a chat room with a name suggestive of child pornography and saw an individual, using the nickname "v^sickboy^v" in July and "EvolDSL" in October, advertising child pornography videos and offering to distribute them from his F-serve in return for additional child pornography. During both undercover sessions, Sergeant Zaglifa made a direct connection with the individual's F-serve and, after uploading encrypted files, downloaded from the F-serve to his computer child-pornography videos. An internet-service-provider ("ISP") representative testified that the individual running the F-serve initiated the sessions with Sergeant Zaglifa from the same physical location.

---

[2] The Court provides here a brief summary of the evidence that the parties presented to the jury at trial. For a more thorough discussion of the facts underlying this case, see *United States v. Conrad*, 578 F. Supp. 2d 1016 (N.D. Ill. 2008), and *United States v. Conrad*, 668 F. Supp. 2d 1071 (N.D. Ill. 2009), which the Court issued after lengthy suppression hearings in this case.

After Sergeant Zaglifa, with the assistance of the ISP, traced the individual's IP addresses for each of the undercover sessions to Rogers Machinery Sales ("Rogers Machinery") – a business that Defendant's father, Roger Conrad, owned – law enforcement agents obtained a warrant to search Rogers Machinery. On December 20, 2002, one team of law enforcement agents executed the search warrant at Rogers Machinery, while a second team went to Roger Conrad's Geneva, Illinois residence ("Geneva Residence"). When law enforcement agents searched Rogers Machinery, they found no evidence of child pornography or F-serve software. At the Geneva Residence, Defendant agreed to accompany law enforcement agents to his apartment on Milwaukee Avenue in Chicago. After arriving there, Defendant signed a waiver of his *Miranda* rights, consented to searches of his Milwaukee Avenue apartment and computers, and admitted, among other things, that he had used his laptop computer to run the F-serve and had advertised and solicited pornographic movies. Law enforcement agents showed copies of printouts from Sergeant Zaglifa's undercover sessions to Defendant, who wrote brief statements on them and signed them to indicate that he had been engaged in the activity during the undercover sessions.

Law enforcement agents forensically tested Defendant's computers in 2003-2004 and found on his Micron Millenia computer child pornography and text logs in which Defendant had used nicknames that were similar to the nicknames and trigger words that he had used during the undercover sessions. In June 2009, the government again forensically examined Defendant's computers, this time pursuant to a search warrant. Using superior software than that used in 2003-2004, Paul Rettig, a Computer Forensic Examiner with the Chicago Regional Computer Forensics Laboratory, found additional chat logs and child pornography on Defendant's

computers, including one of the charged videos. Additionally, Rettig found that the advertisements from the July 14, 2002, undercover session matched the advertisement found in a July 14, 2002, text log from one of Defendant's computers, and he found documents on another of Defendant's computers indicating that Defendant had used variations of the name "Evol" for his business.

Defendant's forensic expert, Tami Loehrs, testified that the Compaq could not have been used to run the F-serve containing the child pornography because – based on a faulty mathematical assumption – it had insufficient capacity to hold that many video files, that another user was physically using the computer, and that someone could have gained remote control of Defendant's computer to run the F-serve. She also testified that the way in which law enforcement agents handled the Compaq made the June 2009 testing unreliable. She conceded, however, that there was no evidence that law enforcement agents had planted any evidence on Defendant's computers or turned back the clocks on the computers. In rebuttal, FBI Special Agent Brent Dempsey testified that Defendant had spoken with the government in April 2007, at which time he stated, among other things, that no one else had physical or remote access to his computer and that he had set up the F-serve and offered to trade child-pornography.

## I.     Rule 29 Motion for Judgment of Acquittal

The Seventh Circuit has noted that "Rule 29(c) does not authorize the judge to play thirteenth juror." *Genova*, 333 F.3d at 757. "In challenging the sufficiency of the evidence, [a defendant] bears a heavy, indeed, nearly insurmountable, burden." *Warren*, 593 F.3d at 546; *see also United States v. Hatten-Lubick*, 525 F.3d 575, 579 (7th Cir. 2008); *United States v. Brown*, 328 F.3d 352, 355 (7th Cir. 2003). That heavy burden "is compounded when such a challenge

rests in large measure on taking issue with the trier of fact's credibility determinations." *United States v. Smith*, 576 F.3d 681, 687 (7th Cir. 2009). "In short, a reviewing court will set aside credibility determinations only if they are clearly erroneous, which occurs only if the district court has chosen to credit exceedingly improbable testimony." *Id.* "[T]estimony will be found exceedingly improbable only if it is 'internally inconsistent' or 'implausible on its face.'" *Id.* (quoting *United States v. Cardona-Rivera*, 904 F.2d 1149, 1152 (7th Cir. 1990)); *see also United States v. Dean*, 574 F.3d 836, 843 n.5 (7th Cir. 2009) ("'We will not upset the jury's credibility determination unless exceptional circumstances exist; that is, it was physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all." (quoting *United States v. Johnson*, 437 F.3d 665, 675 (7th Cir. 2009), with internal quotations from *Johnson* omitted)).

Arguing that Agent McDonough's testimony and the computer evidence were unreliable, Defendant asks the Court to enter a judgment of acquittal. It is not the Court's role, however, to second-guess the jury's credibility assessment because Defendant has not shown that either Agent McDonough's testimony or the computer evidence was implausible on its face or defied the laws of nature. *See Smith*, 576 F.3d at 687; *Dean*, 574 F.3d at 843 n.5. In fact, witnesses corroborated certain details of Agent McDonough's testimony, and the government offered evidence that Defendant's computers were in substantially the same condition in 2009 as they had been when law enforcement agents had obtained them in 2002. Furthermore, a reasonable jury could have found Defendant guilty on all counts even without Agent McDonough's testimony or the computer evidence that Defendant challenges. The jury, for example, could have found Defendant guilty by relying on evidence that (1) the internet account associated with

the F-serve belonged to Defendant's father's business, to which Defendant had access; (2) the

government had found incriminating materials on one of Defendant's computers in 2003-2004,

before the law-enforcement actions on the computers that Defendant now contests; (3)

Defendant made admissions to other law enforcement agents in 2002; and (4) Defendant made

incriminating statements during his 2007 proffer. As such, a reasonable jury could have found

Defendant guilty on all counts, and Defendant is not entitled to a judgment of acquittal.

Moreover, in July 2008 the Court held a lengthy suppression hearing, in which Agent

McDonough, among others, testified. The Court found his testimony credible. *See United States

v. Conrad*, 578 F. Supp. 2d 1016, 1022 (N.D. Ill. 2008).

## II.    Rule 33 Motion for a New Trial

Defendant raises arguments under Rule 33, most of which he has already made in various

pre-trial motions.[3] The Court hereby incorporates its prior rulings on these issues.

### A.    Admission of Defendant's Proffer

Defendant argues that the Court improperly allowed Agent Dempsey to testify in the

---

[3] Specifically, the Court has already ruled on: (1) Defendant's motion to suppress
evidence from Defendant's Milwaukee Avenue apartment (R. 174-1, 9/24/08 Mem. Op. &
Order); (2) Defendant's motion to suppress evidence generated by destroyed Palos Heights
Police computers (R. 168-1, 8/5/08 Minute Order); (3) Defendant's motion to dismiss the
indictment due to pre-indictment delay (R. 131-1, 3/31/08 Minute Order); (4) Defendant's
motion to suppress evidence not properly disclosed (R. 155-1, 6/19/08 Minute Order); (5)
Defendant's motion to exclude evidence from Defendant's Compaq computers (R. 247-1,
11/12/09 Mem. Op. & Order); (6) Defendant's motion to exclude Micron Millenia images (R.
261-1, 12/11/09 Minute Order); (7) Defendant's motion to exclude uncharged chat logs and
screen shots that Sergeant Zaglifa printed during the undercover sessions (R. 229-1, 8/4/09
Minute Order); (8) Defendant's motion to prevent the playing of the charged videos to the jury
(*id.*); (9) the government's motion to exclude expert testimony (R. 284-1, 1/14/10 Minute
Order); (10) Defendant's consolidated motions to suppress evidence gathered pursuant to the
May 19, 2009, search warrant (R. 252-1, 11/23/09 Minute Order); and (11) Defendant's motion
to suppress evidence obtained from Defendant's Compaq Presario computer (*id.*).

government's rebuttal case regarding a limited portion of Defendant's 2007 proffer statement after Defendant presented evidence to the jury that conflicted with statements that he had made during the proffer.  (R. 304-1, Opening Br. at 3-5.)  The proffer agreement expressly provided that if Defendant "should subsequently testify contrary to the substance of the proffer, or otherwise present a position inconsistent with the proffer, nothing shall prevent the government from using the substance of the proffer at sentencing or for any other purpose, at trial for impeachment or in rebuttal testimony. . . ."  Defendant stated during his proffer that he was the only one with physical and remote access to "the computer" and used "the computer" to set up the F-serve to trade child-pornography videos.

Statements made during plea negotiations, including those made at a proffer, "are inadmissible, but a defendant may waive the right to prevent their use."  *United States v. Krilich*, 159 F.3d 1020, 1025 (7th Cir. 1998) (citing Fed. R. Crim. P. 11(e)(6); Fed. R. Evid. 410); *see also United States v. Dortch*, 5 F.3d 1056, 1068 (7th Cir. 1993) (finding that, "absent a waiver, proffer statements are generally not admissible against a defendant").  A defendant waives his rights under Rule 11(e)(6) and Rule 410, however, when he signs a proffer letter.  *See Dortch*, 5 F.3d at 1068; *United States v. Goodapple*, 958 F.2d 1402, 1409 (7th Cir. 1992).

"A proffer, of course, is a defendant's (or someone who is hoping not to become a defendant) controlled statement to government agents made to facilitate plea agreements or discussions."  *United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997), *vacated on other grounds*, 526 U.S. 813, 119 S.Ct. 1707 (1999).  It "is a binding contract, enforced according to its terms."  *United States v. Farmer*, 543 F.3d 363, 374 (7th Cir. 2008); *see also United States v. Williams*, 298 F.3d 688, 694 (7th Cir. 2002).  Courts "hold the government to 'the literal terms'

of the agreement, as well as the 'most meticulous standards of both promise and performance' to insure the integrity of the bargaining process involved in proffers." *Farmer*, 543 F.3d at 374 (quoting *United States v. Schilling*, 142 F.3d 388, 395 (7th Cir. 1998)); *United States v. Cobblah*, 118 F.3d 549, 551 (7th Cir. 1997). Based on the literal terms of Defendant's proffer, "[i]ntroduction of the statements thus was proper if either his testimony or evidence that he presented through the testimony of others contradicted the proffer." *Krilich*, 159 F.3d at 1025 (citing *Goodapple*, 958 F.2d at 1409; *Richardson*, 130 F.3d at 778; *Dortch*, 5 F.3d at 1068). "Statements are inconsistent only if the truth of one implies the falsity of the other." *Krilich*, 159 F.3d at 1025-26.

Defendant presented testimonial evidence that directly contradicted statements that he had made during his proffer, and Defendant therefore waived his right to preclude the government from using the proffer at trial. During Defendant's case-in-chief, Roger Conrad testified that Defendant's Compaq computer had been a business computer at Rogers Machinery. Furthermore, Defendant's expert, Tami Loehrs, testified that she did not believe that the Compaq could have hosted the F-serve because it did not have the capacity to do so and that it would have been possible for someone other than Defendant to have access to the Compaq without Defendant's knowledge. While Defendant argues that the proffer statement does not indicate to which computer Defendant was referring in his proffer, Agent Dempsey credibly testified that he unquestionably understood Defendant to be referring to "both of his computers in government custody."

Because Ms. Loehr's and Roger Conrad's testimony directly contradicted statements in the proffer, the Court appropriately allowed Agent Dempsey to testify at trial regarding the

proffer.[4] By eliciting this testimony, Defendant presented a position that was inconsistent with his proffer and bore the risk that the government would subsequently seek to admit it into evidence. As the Seventh Circuit has cautioned, "just as the defendant must choose whether to protect the proffer statements by not taking the stand, the defendant must choose whether to protect the proffer by carefully determining which lines of questioning to pursue with different witnesses." *Dortch*, 5 F.3d at 1068 (noting that "holding the defendant to the terms of the proffer letter fosters another laudable policy-encouraging defendants to tell the truth during both plea negotiations and subsequent trials"). The Court did not err in admitting Defendant's proffer after Defendant presented evidence that conflicted with it. In addition, the Court did not permit the government to introduce the proffer in its entirety, but rather strictly limited the statements from the proffer that the government could admit.

B.      **Suppression of Milwaukee Avenue Apartment Evidence**

Arguing that "[t]he evidence taken from the Milwaukee [Avenue] apartment was not attenuated under *Brown v. Illinois*" (R. 304-1, Opening Br. at 5), Defendant argues that the Court should have suppressed all evidence that law enforcement agents obtained on December 20, 2002, from Defendant's Milwaukee Avenue apartment. The Court addressed this issue at length in its September 24, 2008, opinion, *see Conrad*, 578 F. Supp. 2d 1016, and Defendant has not offered any new arguments.

As the Court found in its earlier ruling, the law enforcement agents obtained the evidence, including Defendant's voluntary confession, from Defendant's Milwaukee Avenue

---

[4] While the government also notes that the proffer corroborates Agent McDonough's testimony regarding Defendant's purported December 20, 2002, statement (*see* R. 312, Gov't's Resp. at 13), that would not entitle the government to introduce the proffer under its terms.

apartment "'by means sufficiently distinguishable to be purged of the primary taint'" from the search of the Geneva Residence. *Id.* at 1037 (quoting *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407 (1963)). Specifically, (1) law enforcement agents arrived at the Milwaukee Avenue apartment approximately two hours after they improperly entered the curtilage of the Geneva Residence, (2) Defendant signed a written waiver of his *Miranda* rights and a consent to search after being read his rights, (3) the consitutional violation occurred at a different location from the Milwaukee Avenue apartment, and (4) the law enforcement agents acted professionally. *Id.* at 1037-38. The Court did not err in declining to suppress evidence that law enforcement agents found at Defendant's Milwaukee Avenue apartment.

### C.     Admission of Evidence Generated by Destroyed Police Computers

Defendant next argues that the Court erred in denying his motion to suppress screen captures and images that a subsequently-destroyed Palos Heights Police Department computer had generated. As the Court noted in its August 8, 2008, order denying that motion, and as the parties agree is the appropriate standard, the applicable evidence should have been suppressed only if Defendant demonstrated that (1) the government acted in bad faith, (2) the evidence's exculpatory value was apparent before its destruction, and (3) he would have been unable to obtain comparable evidence by other reasonable means. (R. 168-1 (citing *California v. Trombetta*, 467 U.S. 479, 488-89, 104 S.Ct. 2428 (1984); *Hubanks v. Frank*, 392 F.3d 926, 931 (7th Cir. 2004); *United States v. Watts*, 29 F.3d 287, 290 (7th Cir. 1994)).)

Defendant has not satisfied any of these requirements. The unrebutted testimony from the July 2008 suppression hearing established that two floods in a Palos Heights Police Department basement in which the computer was stored caused damage to the computer, and

Palos Heights Police Sergeant Chuck Hankus subsequently destroyed the computers in the basement, including the one that had generated the screen captures and images. (R. 168-1, 8/5/08 Minute Order at 4.) Thus, the government did not destroy the computer in bad faith.

Furthermore, Defendant has not shown that the computer contained exculpatory evidence. According to Defendant, "[t]he charged images themselves were never found on Mr. Conrad's computers. Forensic computer analysts could have utilized the Palos Heights Police computers to verify the origin of the computer that ran the file server." (R. 304-1, Opening Br. at 6.) This argument is factually flawed. As the government notes in its Response, one of the charged images *was* found on one of Defendant's computers. Additionally, Defendant has not established that the computer contained exculpatory evidence, but rather makes the speculative argument that experts may have been able to use material on the destroyed-police computer to locate a different computer that ran the F-serve. The evidence at trial overwhelmingly supported that Defendant operated the F-serve.

Finally, Defendant does not address the final requirement. As the Court found in its August 5, 2008, ruling, however, Defendant had access to comparable evidence, including chat logs, video files, and screen printouts. Further, Defendant could have offered expert testimony or cross examined the government's witnesses regarding whether Defendant had used his computers to run the F-serve. Because Defendant has not satisfied any of the required suppression elements, the Court properly denied his motion to suppress the screen captures and images.

### D.    Pre-Indictment Delay

Defendant next argues that the Court should have dismissed the indictment because the

government's pre-indictment delay caused him prejudice by resulting in the loss of evidence and a significantly-different sentencing regime. The Court addressed this argument in its March 31, 2008, ruling, which it hereby incorporates. (R. 131-1.)

"[T]he statute of limitations for a particular crime generally serves as a safeguard for defendants against unreasonable prosecutorial delay." *United States v. Henderson*, 337 F.3d 914, 919 (7th Cir. 2003). "So long as the indictment is sought within the applicable time frame, and notwithstanding the possible loss of evidence or faded memories, the defendant will normally be able to defend himself adequately." *Id.*

The statute of limitations is not, however, the only safeguard that a defendant has in preventing a delay in an indictment's return. The defendant may establish a due process violation by showing that: "(1) the pre-indictment delay caused substantial prejudice, and (2) 'the delay was an intentional device to gain tactical advantage over the accused.'" *United States v. Wallace*, 326 F.3d 881, 886 (7th Cir. 2003) (quoting *United States v. Dickerson*, 975 F.2d 1245, 1252 (7th Cir. 1992)). "A defendant must first show more than mere speculative harm but instead must establish prejudice with facts that are specific, concrete, and supported by evidence." *Henderson*, 337 F.3d at 920; *United States v. Spears*, 159 F.3d 1081, 1084 (7th Cir. 1998). "If a defendant makes the proper showing, the burden shifts to the government to demonstrate that the 'purpose of the delay was not to gain a tactical advantage over the defendant or for some other impermissible reason.'" *Henderson*, 337 F.3d at 920 (quoting *United States v. McMutuary*, 217 F.3d 477, 482 (7th Cir. 2000)); *Spears*, 159 F.3d at 1084-85. "The government's reasons are then balanced against the prejudice to a defendant to determine whether a due process violation occurred." *Henderson*, 337 F.3d at 920 (citing *United States v.*

*Canoy*, 38 F.3d 893, 902 (7th Cir. 1994)).

According to Defendant, the government's pre-indictment delay caused him prejudice because by the time that the grand jury returned the superseding indictment, the government had destroyed Sergeant Zaglifa's computer and lost copies of Defendant's Compaq computer hard drive. Defendant has not explained in any more detail, however, how those events prejudiced him or that the government intentionally destroyed or lost the evidence to gain a tactical advantage. He has also not shown that the evidence would have aided in his defense, and Defendant had adequate alternative means of dealing with the loss of the evidence. Specifically, Defendant had access to chat logs, video files, and screen printouts, and he could have offered expert testimony or cross examined the government's witnesses regarding who operated the F-serve. Furthermore, while the government lost copies of the Compaq hard drive, it maintained the original hard drive and made additional copies of it in 2009. Ultimately, the loss of physical evidence alone is insufficient to establish actual and substantial prejudice. *See id.*; *Spears*, 159 F.3d at 1085.

Defendant adds that the preindictment delay prejudiced him because "the sentencing regime had changed significantly between Mr. Conrad's initial indictment and his subsequent superseding indictment" (R. 304-1, Opening Br. at 7). As an initial matter, Defendant shares some responsibility for that delay of roughly fourteen months. Approximately two months after the government filed the Information, the Court initially scheduled a change of plea hearing for March 3, 2006. (R. 10-1, 1/20/06 Minute Order.) Due to ongoing plea discussions, the Court rescheduled that change-of-plea date a half-dozen times at Defendant's request or with his concurrence. (*See* R. 13-1, 3/3/06 Minute Order; R. 16-1, 4/10/06 Minute Order; R. 17-1,

5/11/06 Minute Order; R. 18-1, 5/16/06 Minute Order; R. 19-1, 6/8/06 Minute Order; R. 20-1, 7/17/06 Minute Order.) Also during that time, the Court set a trial date of September 11, 2006. (R. 19-1, 6/8/06 Minute Order.) That trial date was continued to February 26, 2007 (R. 24-1, 8/24/06 Minute Order), but the Court struck that date upon Defendant's request. (R. 28-1, 1/19/07 Minute Order.)

In any event, the Seventh Circuit has found that the pre-indictment-delay analysis focuses on a defendant's rights at trial, not sentencing. *United States v. Hutchings*, No. 06-3260, 2007 WL 840520, at *1 (7th Cir. Mar. 21, 2007); *United States v. Cortez-Mendez*, No. 05-3178, 2006 WL 20532, at *2 (7th Cir. Jan. 5, 2006) (noting that "preindictment delay is significant only if it impairs a defendant's right to a fair trial" and citing *United States v. Marion*, 404 U.S. 307, 324-25, 92 S.Ct. 455 (1971); *United States v. Miner*, 127 F.3d 610, 615 (7th Cir. 1997)). Furthermore, Defendant's sentencing argument is purely speculative, especially because the Court has not yet sentenced him.

### E.    Evidence Challenged in Defendant's February 27, 2008, Suppression Motion

Defendant next argues that the Court should have suppressed evidence that the government purportedly disclosed in violation of Federal Rule of Criminal Procedure 16 and did not have a proper chain of custody. The Court addressed these arguments in its June 19, 2008, minute order, finding that the government did not prejudice Defendant by producing the information when it did. (R. 155-1.) Defendant has offered no evidence or argument that calls that ruling into question.

Nearly two years before this case went to trial, on February 8, 2008, the government turned over certain information to Defendant. Defendant now argues that he "may have been

more likely to plead guilty to the original information" and "was placed at a considerable disadvantage because [he] was required to prepare for trial piecemeal." (R. 304-1, Opening Br. at 9.) Both arguments fail.

Because Defendant had nearly two years to prepare for trial after he received the information, he cannot seriously contend that the 2008 production prejudiced him. *See United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007) ("A Rule 16 violation prejudices a defendant only when he is unfairly surprised by the evidence and cannot adequately prepare his defense or when the violation has a substantial influence on the jury."); *Warren*, 454 F.3d at 760. Moreover, to the extent Defendant argues that he was prejudiced because he received certain documents only after the grand jury returned the superseding indictment and thereby increased the potential sentence, his argument fails. Initially, Defendant offers no support, other than pure speculation, that he would have pled guilty had the government provided the information to him earlier. Indeed, Defendant only argues that he "*may* have been more likely to plead guilty." (R. 304-1, Opening Br. at 9 (emphasis added).) Given that Defendant still denies his involvement in the crimes, this argument is further called into question. Furthermore, the information that Defendant allegedly "learned of" after the grand jury returned the superseding indictment related specifically to events of which Defendant was fully aware and which were otherwise mentioned in discovery materials that the government had previously provided to Defendant. As such, the Court finds no prejudice. Nor does the Court find that the government acted in bad faith. Defendant has raised nothing other than the "lengthy delays in this case" to support its bad-faith argument, which alone is not enough to support such a finding under the facts of this case.

**F.     Motion to Exclude Compaq Computer Evidence**

The Court did not err in denying Defendant's motion to suppress all evidence from Defendant's Compaq computers.  In that motion, Defendant argued that the Court should have suppressed both Compaq computers because the Court had previously suppressed all evidence that the government had obtained illegally at the Geneva Residence, and the government could not prove by a preponderance of the evidence that law enforcement agents obtained the laptop computer marked Exhibit 80 from Defendant's Milwaukee Avenue apartment.  Here, Defendant argues that (1) Exhibit 80 "was accessed" on December 20, 2002; (2) Sarah Smith and Roger Conrad testified that Defendant had been at the Geneva Residence on December 19, 2002, and into the early morning hours of December 20, 2002; and (3) accordingly, Exhibit 80 must have been at the Geneva Residence with Defendant when law enforcement agents arrived on the morning of December 20, 2002.  Defendant's argument fails.

As the Court explained in detail in its November 12, 2009, ruling, the government established that Exhibit 80 was at the Milwaukee Avenue apartment when law enforcement agents arrived there on December 20, 2002.  (R. 247-1 at 12-16.)  Agent McDonough credibly identified Exhibit 80 as the laptop that he saw in the Milwaukee Avenue apartment, and he identified Exhibit 81 as the old laptop that Agent Keegan and Sergeant Zaglifa brought to the Milwaukee Avenue apartment from the Geneva Residence.  (*Id.* at 13.)  According to Agent Keegan and Sergeant Zaglifa, Defendant told Agent Keegan at the Geneva Residence that an old laptop in his car contained child pornography.  (*Id.* at 14.)  Agent Keegan credibly testified that Exhibit 80 was not the laptop that law enforcement agents had obtained at the Geneva Residence.  (*Id.* at 14.)  Sergeant Zaglifa recalled joking with Defendant about the old age of the

computer that law enforcement agents had obtained at the Geneva Residence, and he identified Exhibit 81 as that computer.  (*Id.* at 15.)  He also testified that he saw a newer computer at the Milwaukee Avenue apartment.  (*Id.* at 15.)

Agent McDonough also recalled Agent Keegan telling him that law enforcement agents had recovered an old laptop at the Geneva Residence, and Agent McDonough saw an older brown laptop outside the Milwaukee Avenue apartment, before anyone had entered.  (*Id.* at 14.)  According to Agent McDonough, Defendant told him about a new laptop computer in the Milwaukee Avenue apartment that he had primarily used to operate the F-serve.  (*Id.* at 14.)  Further, Defendant told Agent McDonough and Sergeant Zaglifa that he had recently transferred all child pornography from his newer laptop to an external hard drive that was in the Milwaukee Avenue apartment.  (*Id.* at 14.)  The newer laptop has two USB ports that can be used to connect to the external hard drive, while the older laptop does not have a USB port.  (*Id.* at 14.)  Exhibit 80 is five years newer than Exhibit 81.  (*Id.* at 15.)  Finally, in response to Defendant's argument that Exhibit 80 was with him at the Geneva Residence when law enforcement agents arrived there early on December 20, 2002, the Court noted that "there are numerous explanations for how Exhibit 80 could have been at the Milwaukee Avenue apartment when law enforcement agents arrived there the next day."  (*Id.* at 13 n.4.)

The evidence presented at trial does not change the Court's conclusion that Exhibit 80 is the laptop that law enforcement agents recovered at the Milwaukee Avenue apartment.  While Sarah Smith and Roger Conrad each testified that Defendant was at the Geneva Residence at some point between December 19 and 20, 2002, their testimony does not overcome the government's evidence, coming from three separate witnesses, that law enforcement agents

obtained Exhibit 80 from the Milwaukee Avenue apartment. Specifically, the last time Roger

Conrad testified that he spoke to Defendant over the phone at the Geneva Residence was at about

9:00 p.m. on December 19, 2002, and Smith – who on cross examination had difficulty recalling

specifics about that time period – testified that she last saw Defendant after midnight on the

morning of the twentieth and that she did not see him with a laptop during that time. The jury

was entitled to discredit Smith's and Roger Conrad's testimony. *See United States v.*

*Huddleston*, 593 F.3d 596, 601 (7th Cir. 2010).

      **G.**      **404(b) Evidence**

           **1.**      **Micron Images**

Defendant's next argument is that the Court improperly admitted, pursuant to Federal

Rule of Evidence 404(b), images that the government found on Defendant's Micron Millenia

computer because (1) "the only possible relevance that the images on the Micron could have is

necessarily based on an impermissible propensity argument," and (2) "any residual relevance

that these images could even conceivably have is far more prejudicial than probative." (R. 304-

1, Opening Br. at 12.) The Court addressed these issues in its December 11, 2009, minute order

after reviewing the images and charged material in the presence of counsel for both sides, and

Defendant offers nothing that would change the Court's earlier analysis.

The images were relevant not to show propensity, but to establish Defendant's identity as

the person who ran the F-serve and his motive for doing so. (R. 261-1, 12/11/09 Minute Order at

4 (citing *United States v. Hensley*, 574 F.3d 384, 389 (7th Cir. 2009); *United States v. Zahursky*,

580 F.3d 515, 524 (7th Cir. 2009); *United States v. Watts*, 535 F.3d 650, 657-58 (7th Cir. 2008);

*United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006)).) Additionally, the images were not

unfairly prejudicial because their probative value of showing Defendant's identity and motive was significant, and they were not as graphic as the charged images. (*Id.* at 5-6.) Finally, the Court offered to give the appropriate jury instruction at trial. (*Id.* at 6.) The Court did not err in admitting the Micron images.

### 2. Chat Logs

During his undercover session with "v^sickboy^v" on July 14, 2002, in which he used the trigger word "!EVOLdsl," Sergeant Zaglifa printed chat logs and screen shots. Defendant argues that the Court erred in denying his motion to exclude those chat logs and screen shots because they "do not have any probative value whatsoever." (R. 304-1, Opening Br. at 13) The Court properly denied the motion to exclude the chat logs and the images. As explained in the Court's August 4, 2009, minute order, this evidence was admissible under Federal Rule of Evidence 404(b) because (1) it was offered to show Defendant's identity as the person who had operated the F-serve, a proper Rule 404(b) purpose; (2) the undercover session was similar enough to the charged conduct and occurred within two days of the July 12, 2002, undercover session and roughly three months of the October 24, 2002, undercover session; (3) there was sufficient evidence to support a jury finding that Defendant committed the July 14, 2002, act; and (4) the evidence's probative value of showing Defendant's identity was not substantially outweighed by the danger of unfair prejudice. (R. 229-1.) *See also United States v. Stotler*, 591 F.3d 935, 941 (7th Cir. 2010); *Hensley*, 574 F.3d at 389. Defendant has offered nothing that would change that conclusion.

### H. Publication of the Charged Images

Defendant next argues that the Court erred in allowing the government to publish the

charged images to the jury because there was no dispute regarding the ages of the girls in the videos. The Court explained its reasons for declining to accept this argument in its August 4, 2009, minute order. (R. 229-1.) There the Court noted the Supreme Court's holding in *Old Chief v. United States*, which created an exception to the general rule that "the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away" when the issue in question is the defendant's legal status of being convicted of a prior crime. (R. 229-1 at 4 (quoting 519 U.S. 172, 189, 117 S.Ct. 644, 654 (1997)). As the Court explained, however, courts have narrowly interpreted this exception, including in child-pornography cases. (*Id.* at 4-5 (compiling cases).)

Additionally, after the Court issued its opinion on this issue, the Seventh Circuit recognized that "other circuits have explicitly stated that arguments based on *Old Chief* are not persuasive in the context of child-pornography prosecutions." *United States v. Hatfield*, No. 09-2556, 2009 WL 5033916, at *3 (7th Cir. Dec. 22, 2009). It then concluded that "[a]lthough prejudicial, the clips of the 12 videos were not unfairly so, and because they were central to the charged conduct the government had the right to present them to the jury." *Id.* The same conclusion follows here. The government had the burden of proving Defendant's guilt beyond a reasonable doubt, and it was entitled to prove its case without relying on Defendant's charged-materials stipulation. Furthermore, as the government points out, the charged images were especially relevant in this case to rebut Defendant's arguments that the government had engaged in misconduct. Additionally, here the government presented fewer charged images than in *Hatfield*, and the government limited the publication of the relatively-short videos to the jury. The Court did not err in allowing the government to publish the charged images to the jury.

## I. Defendant's Proposed Expert Testimony

Defendant next argues that the Court erred in granting the government's motion to exclude Dr. Mitchell Halper's proposed expert testimony because, Defendant argues, that testimony "would have established for the jury that Mr. Conrad likely did not have any pedophilic tendencies, and therefore did not have any motive to collect these images." (R. 304-1, Opening Br. at 14.) The Court addressed this argument in detail during the January 14, 2010, *Daubert* hearing. As stated in detail in court and in the corresponding minute order, Defendant's proposed expert testimony suffered from several fatal flaws under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993), and Federal Rules of Evidence 702, 703, and 704. (R. 285-1, 1/14/10 Minute Order (compiling cases).) First, Dr. Halper's report and proposed testimony related to pedophilia, not the charged conduct of possessing, transporting, advertising, or distributing child pornography. Therefore, it would not have been helpful to the jury and would have been confusing. Second, Dr. Halper's proposed testimony would have violated Federal Rule of Evidence 704 because it suggested that Defendant did not have the requisite mental state to commit the charged crimes. Third, Dr. Halper's methodology was inherently unreliable under Rule 702 because it was based on discussions with Defendant, whom another doctor did not believe was being open and honest. Finally, for the same reasons, the proposed testimony would have violated Rule 703 because Dr. Halper based his opinion on Defendant's unreliable hearsay statements. Accordingly, the Court did not err in granting the government's motion to exclude Dr. Halper's testimony.

## J. May 13, 2009 Search Warrant

Arguing that the government illegally entered Defendant's Compaq Presario and Micron

Millenia computers and that the search warrant application contained materially false statements and suppressed evidence, Defendant argues that the Court should have suppressed the evidence gathered pursuant to the May 13, 2009, search warrant.  As the Court explained in its November 23, 2009, ruling, however, the government did not illegally access Defendant's computers prior to issuance of the search warrant.  (R. 252-1 at 3-4.)  To ensure that it would have a record of what it had provided to Defendant, the government instead made copies of the computers, which it did not search until after issuance of the search warrant.  (*Id.* at 4.)  Additionally, even had the government illegally copied the computers, the inevitable discovery doctrine would have precluded suppression because the search warrant – which was not issued in reliance on any information obtained by searching the computers illegally – would have allowed the government to obtain the same evidence.  (*Id.*)

Further, the search warrant application did not contain false statements or improperly rely on suppressed evidence.  The application relied, rather, on factually-accurate information, the government did not improperly rely on the previously-suppressed statements, and, in any event, the search warrant application would have established probable cause even without the challenged statements.  (*Id.* at 5-7.)  Accordingly, the Court properly denied Defendant's suppression motion, and Defendant has offered no reason that would change that conclusion.

## K.      Compaq Presario (Exhibit 80) Evidence

Defendant further argues that the Court should have suppressed evidence obtained from Defendant's Compaq Presario because that computer is "now in a materially different condition then it was on December 20, 2002."  (R. 304-1, Opening Br. at 15.)  According to Defendant, the government cannot establish a proper chain of custody because (1) the government did not find

any incriminating evidence when it tested the Compaq in 2003, (2) it lost copies of the Compaq that it had made in 2003, and (3) someone accessed the Compaq in a live state in 2007.

As the Court explained in its November 23, 2009, ruling on this issue, however, none of these arguments establishes that the government was unable to establish a proper chain of custody. (R. 252-1.) The government's forensic-testing tools were superior in 2009 to those in 2003, which accounted for why the government did not find additional evidence during its 2003 search. Additionally, when the government accessed the computer in 2007, it did so for only two minutes, and the unrebutted evidence was that the only files written to at that time were related to the computer's start-up and shut-down. Ultimately, there is no evidence that the Compaq was in a materially different state in 2009 than it was in when the government had obtained it in 2002, and the government laid a proper foundation for its admission at trial. *See United States v. Moore*, 425 F.3d 1061, 1071 (7th Cir. 2005); *United States v. Aviles*, 623 F.2d 1192, 1198 (7th Cir. 1980). As such, the Court properly denied Defendant's motion to suppress evidence from the Compaq Presario.

## L.     Reasonable Doubt Instruction

Finally, Defendant argues that the Court should have instructed the jury with the following definition of reasonable doubt:

> The defendant is presumed innocent until proven guilty. It is the government's responsibility, and the government's alone, to prove the defendant's guilt. In a criminal trial, such as this, the standard of proof is known as proof beyond a reasonable doubt. Standard of proof refers to the degree to which you as jurors must be convinced of the facts of the case to find the defendant guilty. The Supreme Court of the United States has defined proof beyond reasonable doubt as "a subjective state of certitude of the facts in issue." If the government has failed to convince you to this degree on each element of the crimes charged, you must find the defendant not guilty. If a reasonable doubt remains in your minds after hearing and considering all of the evidence as to the defendant's guilt, you must

find the defendant not guilty.

(*See* R. 304, Opening Br. at 16 (quoting *In re Winship*, 397 U.S. 358, 364 (1970)).) "It is well established in this Circuit, however, that neither trial courts nor counsel should attempt to define 'reasonable doubt' for the jury." *United States v. Bruce*, 109 F.3d 323, 329 (7th Cir. 1997); *see also United States v. Perez*, No. 03-1777, 2004 WL 1245293, at *1 (7th Cir. June 4, 2004), *vacated on other grounds*, 543 U.S. 1106, 125 S.Ct. 1009 (2005). This is "due to the well-noted difficulties created by attempts to find a precise definition for that standard of proof." *United States v. He*, 245 F.3d 954, 959 n.3 (7th Cir. 2001) (compiling cases). Accordingly, the Court did not err in declining to give Defendant's proposed "reasonable doubt" instruction.

## CONCLUSION

For the foregoing reasons, Defendant's motion for judgment of acquittal and a new trial is denied.

Dated: April 8, 2010                    ENTERED:

_____
AMY J. ST. EVE
United States District Court Judge